## COMMENT ON THE QUALIFICATIONS FOR PUBLIC OFFICE.

Court of Common Pleas of Cuyahoga County.

EARLE A. FOSTER v. MAYO FESLER ET AL.[*]

Decided, October 20, 1915.

*Libel and Slander—Published Estimate of a Candidate's Qualifications for Public Office—Not Libelous Per Se, When—Fair Criticism Permissible.*

The publication by a "civic league," purporting to voluntarily furnish the public with reliable information concerning candidates for public office, of the statement concerning a certain candidate for office, that—

> "His business and court record is such that in our opinion he is entirely disqualified for the Legislature. He should be defeated,"

is not libelous *per se*, and in the absence of an averment of special damages following the publication, no ground for the recovery of damages exists.

*Cornelius Maloney,* for plaintiff.
*Ford, Snyder & Tilden,* contra.

KENNEDY, J.

After the jury was impaneled and sworn in this case, and when the plaintiff offered evidence tending to prove the claim made in his petition, the defendants objected to the introduction of any evidence under the petition on the ground that it did not state a cause of action.

The question of law thus raised has been thoroughly discussed by learned counsel, and having listened with attention to the arguments presented, and carefully considered the authorities cited, I come now to pass upon the validity of the objection thus raised by the defendants. The question before the court is simply this: Does the petition state a cause of action?

---

[*]Affirmed by the Court of Appeals, *Foster* v. *Fesler et al*, 25 C.C. (N.S.), 449.

I conceive it to be the plain duty of the court in an action of this character to construe the words claimed to be libelous, and to decide, from a careful consideration of the language used, together with the occasion for its utterance, and all the attending circumstances as revealed by the petition itself, whether the words complained of are actionable in themselves, or form a basis for an action for damages without an averment of special damages. In a word, the court must say as a matter of law whether or not the words complained of will bear, or carry the meaning attributed to them in the innuendo.

I am aware that this case has been before other branches of this court, and that they have given a construction to the language complained of as libelous, in passing upon the numerous motions and demurrers filed in the case, and were their opinions unanimous, I should feel great hesitancy in deviating from the straight path thus clearly laid out. But they are not unanimous. On the contrary, these opinions are inharmonious and irreconcilable.

I feel free, therefore, to approach the question *de novo* and to decide upon my own best judgment, assisted as I have been by the clear and forceful arguments of learned counsel for both sides. After a careful consideration of the arguments *pro* and *con,* I feel compelled to reject and disregard the innuendo as stated in the petition, for there is nothing in the character of the language itself, nor in the circumstances surrounding its utterance, even tending to indicate that the language is to be taken in any other than its natural and ordinary sense and meaning.

It is clear in this case that Mr. Foster was a candidate for public office at the time of the publication of the matter complained of; that he sought nomination as a candidate for the state Legislature from this county, and that this candidacy was the occasion of the publication complained of.

The defendants, representing a group or organization of citizens known as the Civic League, and, as averred in plaintiff's petition, "purporting voluntarily to furnish the public with reliable information concerning candidates for public office,"

said of plaintiff as such candidate, "His business and court record is such that in our opinion he is entirely disqualified for the Legislature. He should be defeated." This statement was published in the Cleveland *Leader,* a newspaper of wide circulation, at the instance of the defendants, just one week prior to the primary election at which Mr. Foster was to be voted upon, and with reference to him as such candidate. It therefore plainly appears that the occasion gave defendants a right to employ a greater freedom of expression of opinion concerning Mr. Foster's qualifications and characteristics, at least, than would have been permissible had he been only a humble citizen walking along the ordinary private paths of life. He dared the light by becoming a candidate before the people, and he exposed himself voluntarily to a criticism that might be harsh and severe, and might, without becoming a ground for an action for damages, tend not only to hurt his own feelings, but also to make people think less of him than they would had he not thus offered himself as a candidate. This is not only the law in such cases, as I understand it, but also the inevitable human consequence.

In giving expression to this view of the question, I have particularly in mind the opinion written by Judge Phillips in the case of *Shallenberger* v. *Scripps Publishing Company,* 8 Ohio N.P. (N.S.), 633, which opinion was justly commended by the circuit court when the case came before them, and was later affirmed without report by the Supreme Court. (85 O. S., 492.)

On page 644 of this opinion, in drawing his conclusions, Judge Phillips said:

"I believe the authorities are uniformly to the effect that when one offers himself as a candidate for public office, his qualifications and fitness for the office he seeks may be freely discussed and commented upon in the newspapers or otherwise, so long as the comments are fair and in good faith, and are limited to his fitness for the office. Upon a somewhat careful consideration of the article complained of, in the light of the authorities in point, I must find that, while some of the language employed is coarse and harsh, and while some of the statements are unpleasing and derogatory—perhaps hyperbolical—they are not, in their nature and under the circumstances, calumnious or defamatory."

Now, the language here complained of is limited to a discussion of Mr. Foster's fitness for the office of General Assembly-man. In effect it says that its publishers have formed an opinion, based upon Mr. Foster's business and court record, that he lacks the qualifications of a legislator, and should, therefore, be defeated. I must say candidly, and weighing carefully the argument of Mr. Maloney, that I can make nothing else out of it, and I think that to be the natural, unstrained construction of the language.

I can well understand that Mr. Foster did not like to have himself thus described, and that his friends resented this characterization of him. And I can also imagine that to some minds the imputation of something more than incompetency might have been conveyed. But in considering the question raised by this objection, I am only concerned with what I believe to be the natural, ordinary acceptation of this language, not what it would mean to some who might possibly see evil in this form of expression. I am utterly unable to see in these words a natural, reasonable insinuation of dishonorable conduct, or of any moral turpitude whatever. No claim is made that his business was injured. In fact, it is admitted that, unless this language is libelous *per se*, this case must fail. I can not see that the words in themselves are calculated to injure Mr. Foster in any other way than in his candidacy for public office, nor that they reflect upon his honor or his good morals, and this view is not weakened, I am sure, when we remember that Mr. Foster was duly nominated by his party one week after the words complained of were published. Therefore, I must say that the words are not libelous *per se*, and since no claim is made that any special damages followed the publication of these words, I am convinced that Mr. Foster fails to state a legal ground for recovery in his petition.

I have given careful attention to this case, and am most desirous of reaching a correct conclusion. I have carefully examined the authorities submitted, and believe that I agree generally with counsel for both sides as to the law applicable to the case.

I have read the case of *Post Publishing Co.* v. *Moloney*, 50 O.

S., 71, urged by counsel for plaintiff as the controlling case to apply in this situation, and fully agree with the law as therein expressed. I feel with the judge who wrote that opinion that a man does not need to immolate his private character by laying it on the altar of public opinion, exposed to the fires of adverse and unwarranted criticism, when he offers his abilities to the people as a candidate, or even when he accepts public service as an appointed officer. But to falsely say of a man that "he is said to have been in the workhouse and to have a criminal record," as was said in the Moloney case, is far, far beyond saying of a candidate for office that "his business and court record is such that in our opinion he is entirely disqualified for the Legislature. He should be defeated."

These expressions will not bear the slightest comparison, nor can I agree with plaintiff's counsel that the Shallenberger case, of which I have already spoken, is not in point here. It seems to me to be so directly in point as to be controlling. Certainly the language in that case approached much nearer to vituperation and vitriolic sarcasm, and was more directly calculated to be an attack upon the business and professional standing of the plaintiff than is the language complained of here. And yet the court, on demurrer, even with allegations of falsity, malice and bad faith in the petition, found that such language was only fair criticism of a candidate for office, was not actionable in itself, and was supported in this view by both the upper courts.

No; the law of such cases is clear. It is clear under the law, as plaintiff's counsel has said, that the judge must read this language as the ordinary, common, every-day man must reasonably read it. In this way alone I must read it, for I do not claim to be any other or different sort of man; and from my view-point, under the construction that I, as such a man, placed naturally and without strain upon these words, I find no imputation of crookedness, immorality or dishonor upon their face, and therefore feel that there is nothing under the law for this jury to consider.

The objection of defendants to the introduction of evidence under this petition will therefore be sustained.